Anna O'Brien, Respondent, v. B. L. M. Bates Corporation, Appellant.

Frank Martin, Respondent, v. B. L. M. Bates Corporation, Appellant.

First Department, February 6, 1925.

Libel and slander — action for slander — corporation may be liable for slander committed by employee in scope of duty — defendant is not liable for slander committed by assistant manager at time he ordered plaintiffs out of guest's room.

A corporation may be held liable for slander committed by its officers, employees or agents when acting within the actual or implied scope of their employment or where the slander, though outside the scope of their employment, is ratified by the corporation.

The defendant, a corporation, proprietor and manager of a hotel, is not liable to the plaintiffs who were not guests of the hotel for the slanderous statements made by the assistant manager of the hotel when he ordered plaintiffs to leave the room of a guest, for the slander was an independent act upon the part of the assistant manager not in any wise within the scope of his employment or the performance of the particular duty he was engaged in at the time, that is, removing from the room of the hotel persons found guilty of misconduct.

Appeal in each of the above-entitled actions by the defendant, B. L. M. Bates Corporation, from judgments of the Supreme Court in favor of the respective plaintiffs, entered in the office of the clerk of the county of New York on the 23d day of April, 1924, upon the verdict of a jury for $1,000 in the first above-entitled action and for $500 in the second above-entitled action, and also from orders in each of the above-entitled actions, entered in the office of the clerk of the county of New York on the 25th day of April, 1924, denying the defendant's motion for a new trial in each action made upon the minutes.

*Edwards, Murphy & Minton* [*Harold R. Medina* of counsel; *John McKim Minton, Jr.,* with him on the brief], for the appellant.

*George S. Fulton,* for the respondents.

FINCH, J.:

The action is in slander. The defendant is a corporation and is the proprietor and manager of the Hotel Belmont. The plaintiff Martin is a barber employed in a barber shop leased from the defendant, in the hotel, and the plaintiff Anna O'Brien is a manicurist employed in the same barber shop. According to the plaintiffs' testimony, they were summoned to the room of a guest of the hotel to do some work, and while so employed, the defendant's assistant manager entered and ejected the plaintiffs, applying slanderous epithets to them in the presence of divers persons. The jury has found that the defendant's agent used the words complained of, and the appellant does not contend that the finding is against the weight of the evidence. Since the decision of *Kharas* v. *Collier* (171 App. Div. 388) there is no doubt but that a corporation may be held liable for slander. There the court, by Mr. Justice PAGE, said: "The question whether a corporation could be sued for slander does not seem to have been presented to our courts since the case of *Eichner* v. *Bowery Bank* (24 App. Div. 63) was decided. It has, however, been before the courts of other States, and it has uniformly, so far as I am advised, been held that the corporation was liable [citing cases]. * * *. The true rule, in my opinion, is that a corporation is liable for torts committed by its officers or agents when acting within the actual or implied scope of their employment, or by ratification may become responsible for such acts when committed in excess of their authority. Within the content of this rule a corporation may be held liable for a slander. The case of *Eichner* v. *Bowery Bank* (*supra*) holding the contrary should be overruled."

The issue in the case at bar, therefore, is whether the slander can be said to be within the implied authority from the master to the servant.

The authority given to the agent by the defendant was to make investigations to see if there was improper conduct in any of the rooms of the hotel, and if he found such, to remove those guilty of such conduct from the rooms of the hotel, or take such other appropriate action as was reasonably necessary. When, however, he not only ordered the plaintiff from the rooms, but in addition applied the slanderous epithets to them, he was as to the latter going outside of the scope of his employment. This constituted an independent act upon the part of the agent, not in any wise comprised within or forming a part of any action called for in the performance of his duty to his employer, as, for instance, ordering the plaintiffs to leave the room or the use of necessary force in ejecting them. In the case of *Mali* v. *Lord* (39 N. Y. 381), when

the Court of Appeals wished to illustrate an act which would be an independent tort outside of the scope of the authority delegated to the servant, Judge Grover said: " A master is responsible, civilly, for the fraud, negligence or other wrongful act of his servant, committed in the transaction of his business.   *   *   *   He is not responsible for the willful injury committed by the servant, while so engaged, unless such injury results from the business transacted by the servant for his master.   *   *   *   Applying these principles to the present case, the inquiry is, whether a merchant, by employing a clerk to sell goods for him in his absence, or a superintendent to take the general charge and management of his business at a particular store, thereby confers authority upon such clerk or superintendent to arrest, detain and search anyone suspected  of having stolen, and secreted about his person, any of the goods kept in such store.  If he does, he is responsible for such acts of the clerk or superintendent.  If not, then such acts are not within the scope of the authority delegated to the superintendent, and the employer is not responsible therefor, for the reason, that, while in their performance, the servant is not engaged in the business of the master, any more than in committing an assault upon, or *slandering,* a customer."   (Italics not in original.)

Where a servant had the duty of the collection of the police assessments and the granting of receipts therefor, and charged the pursuer with having forged certain receipts, it was held that the slander was not within the scope of his employment, the court, by Lord Chancellor Loreburn, in *Glasgow Corporation* v. *Lorimer* (L. R. [1911] A. C. 209), saying: " I do not think that it is good law to say that the corporation is bound by anything said by one of its servants which is connected with the business of that servant.   The question is whether or not there is any authority to communicate on behalf of the corporation any comment or statement of opinion at all."

And in the same case, Lord Shaw of Dunfermline said: " This is an action for slander; and for myself, I fail to find any countenance in the case for the proposition that slander was either on instructions or of necessity part of the task of ' endeavoring to collect ' certain rates.   *   *   *   It is perfectly true that it was part of Gilmour's duty to look at the receipts given for payments formerly made; but I entirely agree with my noble and learned friends who have preceded me that it was no part of his duty to express his own opinion as to the genuineness of such documents.  This is only a euphemistic way of saying that it was not within the scope of his duty to slander the producers of such documents or to allege that those documents were forged or altered by them.   *   *   *

First Department, February, 1925. [Vol. 211

If, however, it were to be held that persons in the ordinary and comparatively humble position of this officer were within the scope of their employment in expressing opinions as to the conduct of those with whom they have dealings in the course of doing their work, the consequences might be of the most serious character, and the essential justice which underlies the maxim *qui facit per alium facit per se* would disappear. In my opinion that maxim does not apply; and responsibility for the servant's alleged slander does not attach to the employer."

Applying the principle here enunciated to the case at bar, it is clear that it could more plausibly be argued that it was within the duty of the servant collecting the assessments and giving receipts therefor to make the charge of having forged receipts, so as to draw a possible admission and thereby ascertain the truth, than it was for the servant in the case at bar to apply vile epithets to the plaintiffs in addition to ordering them from the room. No one could seriously contend that a chauffeur, in warning a fellow chauffeur not to drive into him, would have the right to utter a slander for which his employer would be responsible; and yet, if the plaintiffs could succeed in the case at bar, so, too, could the chauffeur slandered hold the employer of the chauffeur slandering him for damages for the slander. To state such a case is to show clearly the lack of a cause of action in the plaintiffs.

Assuming that the defendant's agent was acting within the scope of his authority in requesting the plaintiffs to leave the room, this could not comprise authority to apply vile epithets to the plaintiffs. The words of the Court of Appeals of Kentucky in *Duquesne Distributing Co.* v. *Greenbaum* (135 Ky. 182) seem peculiarly applicable. There a salesman of the defendant, while engaged in the business of the defendant, uttered slanderous statements concerning the plaintiff. The court said: "Slanderous words are easily spoken, are usually uttered under the influence of passion or excitement, and more frequently than otherwise are the voluntary thought and act of the speaker. Or, to put it in another way, the words spoken are not generally prompted by or put into the mouth of the speaker by any other person, and represent nothing more than his personal views or opinions about the person or thing spoken of. If principals or masters could be held liable for every defamatory utterance of their servants or agents while in their service, it would subject them to liability that they could not protect or guard against. No person can reasonably prevent another, not immediately in his presence, from giving expression to his voluntary opinions, however defamatory they may be. It would be entirely out of the question to hold the principal or

master responsible for every reckless, thoughtless, or even deliberate speech made by his agent or servant concerning or relating to persons that the agent or servant may meet, or know, or come in contact with while in the service of his principal or master."

Analogies drawn from causes of action growing out of breaches of duty by servants of railroad carriers are not authorities bearing on the case at bar, since in the former there is a contract obligation as well as a common-law duty owing from the carrier to the passenger. The same may be said of innkeepers and their guests. In the case at bar neither of the plaintiffs was a guest of the hotel.

It follows that the judgments should be reversed, with costs, and the complaints dismissed, with costs.

CLARKE, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

In each case: Judgment and order reversed, with costs, and complaint dismissed, with costs.