PAINE WEBBER JACKSON AND CURTIS, INC. *v.*
GEOFFREY J. WINTERS
(8127)

SPALLONE, NORCOTT and LAVERY, Js.

Argued April 20—decision released August 21, 1990

*Alan R. Spirer,* with whom was *Jan A. Marcus,* for the appellant (plaintiff).

*John H. Chapman,* with whom, on the brief, was *Brian E. Moran,* for the appellee (defendant).

SPALLONE, J. After remand by this court, the trial court rendered judgments upon jury verdicts for the plaintiff on claims of breach of contract and for the defendant on various counterclaims. On appeal, the plaintiff challenges the trial court's (1) instructions to the jury on the New York law defining an employer's responsibility for the intentional torts of its agents, (2) failure to direct a verdict or set aside the verdict on the counterclaim of defamation on the ground of insufficient evidence, and (3) denial of interest on the amount awarded in the breach of contract judgment which exceeded Paine Webber's pretrial offer of judgment. The plaintiff's claims attacking the verdict on the defamation counterclaim are unpersuasive, but we agree with its claim for interest.

The plaintiff, a New York brokerage corporation, engaged the defendant, Geoffrey J. Winters, a successful stockbroker, as a managing director in September, 1982. As consideration for joining the firm, the defendant received an interest free loan of $300,000 secured by two promissory notes due at the end of five years. This "loan" was essentially a sign-on bonus; neither party contemplated repayment if Winters remained in the plaintiff's employ for five years.

The defendant was, however, fired by the plaintiff in March, 1984, for willful misconduct and impaired financial responsibility. Under the terms of the notes, termination for those reasons was a ground upon which the plaintiff could elect to accelerate the debt. Accordingly, it demanded immediate repayment and brought suit in Connecticut when the defendant, a state resident, refused to repay the loan. The defendant asserted twelve counterclaims, including an allegation that after he was fired, the plaintiff's employees made false and defamatory statements about him to his clients.

The plaintiff filed a timely offer of judgment, offering to settle its claims on the notes for $295,000. The defendant did not respond to this offer or make his own offer of judgment on his counterclaims. The plaintiff was subsequently awarded summary judgment on its claims in February, 1986. On the defendant's appeal, the judgment was set aside by this court on the ground that the trial court had impermissibly resolved issues of fact. See *Paine Webber Jackson & Curtis, Inc.* v. *Winters,* 13 Conn. App. 712, 722, 539 A.2d 595, cert. denied, 200 Conn. 803, 545 A.2d 1100 (1988).

On remand, the trial court, on the bases of express terms in the promissory notes, the loci of the contracts and the allegedly tortious acts, determined that New York law would apply to all claims and counterclaims. Neither party challenged this decision at trial or on appeal. The court subsequently instructed the jury on the New York law governing an employer's liability for acts of employees and agents.

The jury returned a verdict for the plaintiff on the debt and awarded it $440,000 in damages, costs and fees. The jury also returned a verdict for the defendant on five of his counterclaims, awarding a total of $440,000.18,[1] including an award of $300,000 on the

---

[1] The jury awarded the defendant $300,000 on his counterclaim for defamation, $140,000 on his counterclaim for conversion of personal files, and,

counterclaim for defamation. The court rendered separate judgments on the verdicts in May, 1989, and denied the plaintiff's motions to set aside the defendant's verdict and for interest on the breach of contract award which recovery exceeded its offer of judgment. This appeal ensued.

## I

The plaintiff's first two claims challenge the jury verdict on the defendant's counterclaim for defamation. The plaintiff asserts that it should not have been held liable for an unidentified employee's intentional torts, acts it neither authorized nor ratified. The plaintiff claims (1) that the court's jury instructions misstated the applicable New York law, and (2) that there was insufficient evidence presented to establish its liability. Both claims are without merit.

The defendant's counterclaim for defamation, slander and libel was based on allegations that the plaintiff's executives made false statements to the defendant's clients implying that he had engaged in unlawful activities or unauthorized stock trading. Ebon Alabastur, a long-standing client of the defendant, testified to the principal defamatory acts. He related conversations with the plaintiff's executives after the defendant's discharge. Alabastur first was called by a Mr. Kaufman, the executive who had fired the defendant, and was falsely informed that the defendant "was probably no longer in business because he had litigation pending against him." Alabastur subsequently was called by the plaintiff's account executive who had been assigned to manage his portfolio. That individual read and later mailed to Alabastur the text of a published article containing the false implication that the defend-

pursuant to New York law, a nominal award of six cents on each of his counterclaims for breach of employment contract, intentional interference with contract and intentional interference with prospective advantage.

ant, among other brokers, had lost two million dollars of client funds through questionable stock trades.

## A

The jury was instructed that the plaintiff could be held liable for an employee's torts if the employee acted within the scope of his employment, in furtherance of the employer's business, and if such conduct was generally foreseeable. Both parties concede that the jury charge expresses the common law doctrine of respondeat superior to define the circumstances in which a master may be held responsible for a servant's acts. The plaintiff argues that, in the case of intentional torts, New York has departed from the common law standard to require proof of bad faith or actual complicity in the employee's conduct before liability can be imposed on the employer. We do not agree.

The plaintiff asserts that "[s]lander is an intentional tort and is not normally within the scope of anyone's employment or authority." *Gerard, Inc.* v. *May & Co.,* 51 Misc. 2d 711, 712, 273 N.Y.S.2d 888 (1966). " 'If principals or masters could be held liable for every defamatory utterance of their servants or agents while in their service, it would subject them to liability that they could not protect or guard against. . . . It would be entirely out of the question to hold the principal or master responsible for every reckless, thoughtless, or even deliberate speech made by his agent or servant . . . while in the service of his principal or master.' " *O'Brien* v. *B. L. M. Bates Corporation,* 211 App. Div. 743, 746–47, 208 N.Y.S. 110 (1st Dept. 1925). The plaintiff argues that under the proper New York standard, "[a]n employer who is acting in good faith and who has not induced an employee to commit an intentional tort is not liable for the employee's acts." *Banque Worms* v. *Luis A. Duque Pena E Hijos, Ltda.,* 652 F. Sup. 770, 773 (S.D.N.Y. 1986).

Contrary to the plaintiff's assertions, we conclude that New York continues to apply the doctrine of respondeat superior to tort liability and that the trial court correctly instructed the jury on the elements of the doctrine as expressed in the landmark case of *Riviello* v. *Waldron,* 47 N.Y.2d 297, 391 N.E.2d 1278, 418 N.Y.S.2d 300 (1979). The test for employer liability is " ' "whether the act was done while the servant was doing his master's work, no matter how irregularly or with what disregard of instruction." ' " Id., 302. If generally foreseeable, even intentional torts may fall within the scope of employment. Id., 304; see also *Murray* v. *Watervliet School District,* 130 App. Div. 2d 830, 515 N.Y.S.2d 150 (1987).

The plaintiff misconstrues the holdings of his cited authorities, cases that we conclude are consistent with the principles of *Riviello.* In *Ogust* v. *Institute for Public Service,* 216 App. Div. 118, 214 N.Y.S. 662 (1926), the complaint of slander was dismissed because the defamatory letter was signed by the institute's director personally, not in his executive capacity. In *Gerard, Inc.* v. *May & Co.,* supra, the court dismissed a slander action only because there were no facts alleging that the employee acted with express, implied or apparent authority. The court in *O'Brien* v. *B. L. M. Bates Corporation,* supra, dismissed the complaint of slander because the assistant manager of the hotel was acting independently and not in furtherance of hotel business. "[T]here is no doubt that a corporation may be held liable for slander [when agents act] within the actual or implied scope of their employment." Id., 744. Finally, the defendant in *Banque Worms* v. *Luis A. Duque Pena E Hijos, Ltda.,* supra, was charged with violating federal, not New York, law. The standard of employer liability quoted by the plaintiff is not New York law but rather the statutory standard for violations of the federal Securities Exchange Act. See also *Essig* v. *United*

*States,* 675 F. Sup. 84, 90 (E.D.N.Y. 1987) (New York substantive law follows doctrine of respondeat superior); *Moscarelli* v. *Stamm,* 288 F. Sup. 453, 460–61 (E.D.N.Y. 1968) (distinguishing the federal standard from New York's common law standard of employer liability).

The doctrine of respondeat superior focuses on the employee's conduct rather than on the employer's knowledge or approval of the acts. If the employee acted with apparent authority in furtherance of employer business, the employer's consent or ratification of the misconduct is irrelevant to determining compensatory damages; even an innocent employer must compensate an injured party. The jury here was correctly instructed in accordance with New York law that the plaintiff's lack of good faith or complicity in its employees' acts were relevant only to the determination of whether to award punitive, as well as compensatory, damages.

## B

The plaintiff next claims that the defendant failed to introduce sufficient evidence to establish its liability under even the broad doctrine of respondeat superior. The plaintiff asserts that the defendant offered no proof as to the identity of the person who purportedly called Alabastur and repeated the defamatory statements contained in the news article. Absent proof of identity, the jury could not have determined whether the caller was acting within the scope of his employment and in furtherance of brokerage business. The plaintiff argues, therefore, that the court should have directed the verdict or subsequently set aside the verdict for the defendant on the defamation counterclaim. The court properly accepted the verdict.

A directed verdict is appropriate only when the jury could not reasonably and legally reach a different con-

clusion. *Golembeski* v. *Metichewan Grange No. 190,* 20 Conn. App. 699, 701, 569 A.2d 1157 (1990). Despite the plaintiff's argument to the contrary, the court correctly submitted to the jury the questions of fact relevant to determining the plaintiff's liability for employee misconduct. See *Dunham* v. *Dunham,* 204 Conn. 303, 320, 528 A.2d 1123 (1987). The jury returned a verdict for the defendant on his defamation counterclaim, and the court's refusal to set aside the verdict is entitled to great weight. *Shenefield* v. *Greenwich Hospital Assn.,* 10 Conn. App. 239, 247, 522 A.2d 829 (1987). The court's decision will be upheld on appeal if, from the evidence presented, the jury could reasonably have concluded as it did. *LaFaive* v. *DiLoreto,* 2 Conn. App. 58, 59–60, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984).

The plaintiff's sole basis for challenging the verdict is that Alabastur could not identify his second caller. This argument is unpersuasive and inconsistent with the evidence for two reasons. First, although Alabastur could not remember the name of the person who read and later republished the defamatory news article, the caller had identified himself as a Paine Webber account executive. The caller exhibited knowledge of Alabastur's account activity and portfolio, information the plaintiff keeps confidential. The jury could reasonably have inferred that the caller was a Paine Webber executive, one of those few individuals permitted access to customer accounts, and that this officer was calling on behalf of the plaintiff and on its business.

Moreover, the jury interrogatories do not indicate that the jury decided that a Paine Webber employee had defamed the defendant on the basis of this particular phone call. Alabastur also testified to a conversation with Kaufman, the Paine Webber executive who had fired the defendant, in which Kaufman falsely stated that there was litigation pending against the

defendant. The statement also falsely implied that the defendant had engaged in conduct so seriously wrong that he was "probably no longer in business." Kaufman was clearly identified as a Paine Webber employee, acting in furtherance of the plaintiff's business rather than for his own interests.

Either of these conversations provides a basis for a finding of slander per se if the jury accepted that a Paine Webber employee uttered the statement disparaging the defendant's professional reputation in an attempt to discourage Alabastur from transferring his account to the defendant's new brokerage firm. Either of these conversations, therefore, provides sufficient evidence to support the jury's verdict on the counterclaim of defamation.

## II

On the plaintiff's claims of breach of contract, judgment was rendered in the amount of $440,000 for damages, attorney's fees and costs. The plaintiff then moved for an award of interest pursuant to General Statutes § 52-192a and Practice Book § 350[2] because

---

[2] General Statutes § 52-192a provides in pertinent part: "(a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. . . . If the 'offer of judgment' is not accepted within thirty days, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. . . .

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date . . . the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. . . . The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accord-

the amount recovered exceeded its offer of judgment of $295,000. The court denied this motion on the ground that prejudgment interest on the debt was barred by both New York law and the terms of the contracts. The plaintiff argues on appeal that Connecticut's offer of judgment rule is procedural and should be applied to this case despite the determination that another state's law governs substantive issues. We agree.

The trial court, in its memorandum of decision denying the plaintiff's motion for interest, clearly regarded this issue as a question of whether to include prejudgment interest as part of its award of damages flowing from the defendant's breach of contract. By reference to general choice of law rules, the court determined that New York law governed the parties' contractual rights and duties, the measure of recovery, and whether such recovery included prejudgment interest. See 1 Restatement (Second), Conflicts of Laws §§ 187, 207, comment e.[3] Under New York law, the contract rate of interest governs until the debt principal is paid or until the con-

---

ingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

Practice Book § 350, which describes the rule used when the plaintiff recovers an amount equal to or greater than a filed offer of judgment, contains substantially the same language as General Statutes § 52-192a (b).

[3] The Restatement (Second) of Conflicts of Laws § 187 provides in pertinent part: "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."

Section 207 provides that "[t]he measure of recovery for a breach of contract is determined by the local law of the state selected by application of the rules of §§ 187-88."

Comment e of § 207 provides that "[t]he local law of the state selected by application of the rule of this Section determines whether plaintiff can recover interest, and, if so, the rate, upon damages awarded him for the period between the breach of contract and the rendition of judgment. This law also determines the validity of an express contractual provision for the payment of a stipulated rate of interest."

tract is merged in a judgment. *Citibank* v. *Liebowitz,* 110 App. Div. 2d 615, 616, 487 N.Y.S.2d 368 (1985). The contracts in this case, namely, the two promissory notes, specified both that New York law would govern and that *no* interest would at any time be due. The court, therefore, concluded that it was without authority to apply § 52-192a.

We have no dispute with the court's determination that New York law applied to the substantive issues of liability and damages. See *Santoro* v. *Osman,* 149 Conn. 9, 12, 174 A.2d 800 (1961) (note executed and payable in New York was governed by New York law). We also do not dispute the court's determination that the parties' contract barred an award of interest on the debt. We do not agree, however, that interest awarded pursuant to § 52-192a is an award of interest on a debt or that it involves the determination of substantive contract and liability issues.

The judicial rule of thumb, that in a choice of law situation the forum state will apply its own procedure; see *Gibson* v. *Fullin,* 172 Conn. 407, 411, 374 A.2d 1061 (1977); brings us to the vexing question of which rules are "procedural" and which "substantive." These terms "are much talked about in the books as though they defined a great divide cutting across the whole domain of law. But, of course, 'substance' and 'procedure' are the same keywords to very different problems." *Guaranty Trust Co.* v. *York,* 326 U.S. 99, 108, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945); see also *Frenette* v. *Vickery,* 522 F. Sup. 1098, 1100 (D. Conn. 1981).

We will not be enticed to decide simplistically that our offer of judgment rule is procedural merely because it is included in our rules of practice; Practice Book § 350; or upon the axiom that "the law of the forum determines the remedy." *Gibson* v. *Fullin,* supra. " '[M]atters of substance and procedure must not be

confounded because they happen to have the same name.' " *New England Fruit & Produce Co.* v. *Hines,* 97 Conn. 225, 228, 116 A. 243 (1922). Nor will we refuse to apply § 52-192a because our courts have sometimes labelled this a rule of "prejudgment" interest, or because a federal court has determined this law to be "substantive." The issue before us is whether, in these circumstances, an award of interest on a verdict in excess of a rejected offer of judgment requires a substantive determination of the merits of the claim.

We begin by noting that New York regards its similar rules as procedural. Section 52-192a provides an economic incentive for parties to settle disputes before trial. *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 301, 305, 472 A.2d 316 (1984); *Kusha* v. *Respondowski,* 3 Conn. App. 570, 574, 490 A.2d 1014 (1985). Correspondingly, New York's Civil Practice Law and Rule (CPLR) contains similar provisions of "Tender" and "Offer to Compromise." CPLR §§ 3219, 3221. New York rules impose penalties on a plaintiff who has recovered less than the amount of a defendant's pretrial offer. These rules are deemed procedural and without effect on substantive issues in the litigation. See *Master Waterproofers, Inc.* v. *Auserehl & Son Contracting Corporation,* 205 N.Y.S.2d 401, 402 (1960) (interpreting the relevant provisions of New York's rules of practice); CPLR § 101 (New York's rules of practice govern procedure used in state civil actions).

We deem § 52-192a to be a similarly procedural rule, punitive in nature, and enacted to promote fair and reasonable pretrial compromises of litigation. *Gillis* v. *Gillis,* 21 Conn. App. 549, 554, 575 A.2d 230 (1990); *Crowther* v. *Gerber Garment Technology, Inc.,* 8 Conn. App. 254, 267, 513 A.2d 144 (1986). In contrast is General Statutes § 37-3a,[4] a substantive law that requires

---

[4] General Statutes § 37-3a provides in pertinent part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per-

an analysis of the merits of the underlying claim. Section 37-3a allows the court, in its discretion, to award prejudgment interest for the wrongful retention of money. See *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.,* 18 Conn. App. 559, 565, 559 A.2d 241 (1989); *Perl* v. *Case,* 3 Conn. App. 111, 116, 485 A.2d 1331 (1985). New York has a similar substantive rule, CPLR § 5001. Interest awarded pursuant to the substantive rule § 37-3a constitutes an element of the damages awarded on debts owing. *Perl* v. *Case,* supra. See also *Stauffer Chemical Co.* v. *Keysor-Century Corporation,* 541 F. Sup. 234, 238 (D. Del. 1982) (prejudgment interest on defendant's debt awarded pursuant to § 37-3a because Connecticut law governed substantive contract issues).

It is clear that the court here could not have granted the plaintiff interest pursuant to the substantive rule § 37-3a because the promissory notes and New York law barred interest on the debt itself before judgment. This conclusion is unaffected by the label of "postjudgment" interest sometimes applied to § 37-3a. Similarly, the court should have applied § 52-192a despite the rule's occasional label as "prejudgment" interest. Our courts have not been consistent in the use of these terms. Compare *O'Leary* v. *Industrial Park Corporation,* 211 Conn. 648, 653, 560 A.2d 968 (1989), and *Gionfriddo* v. *Avis Rent A Car System, Inc.,* supra, 308 (§ 52-192a determines prejudgment interest and § 37-3a determines postjudgment interest) with *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* 210 Conn. 734, 748, 557 A.2d 525 (1989), and *Ottaviani* v. *Pechi,* 16 Conn. App. 705, 708, 548 A.2d 1354 (1989) (§ 37-3a allows award of prejudgment interest). Moreover, the case that most clearly labels § 52-192a a statute of

---

cent a year, and no more, may be recovered and allowed in civil actions . . . including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable . . . . "

"prejudgment" interest specifically limits itself to claims that *do not,* as here, involve recovery of money. *Gionfriddo* v. *Avis Rent A Car System, Inc.,* supra. The holding of *Gionfriddo,* that § 52-192a involves prejudgment interest and § 37-3a involves postjudgment interest, applies only to claims not concerned with the recovery of money, an exception provided for in § 37-3a. Id.

Regardless of label, prejudgment interest awarded pursuant to § 52-192a is not interest awarded on a debt. We must keep before us the question of whether an award of interest following a rejected offer of judgment requires a determination of the substantive issues of a case. We conclude that it does not.

Unlike § 37-3a, § 52-192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts. Section 52-192a applies only to civil actions on contracts or for the recovery of money. Wrongful detention of money need not be found. The interest awarded is in no way discretionary. The statute provides that the court *shall* examine the record after trial, and if the plaintiff's recovery exceeds the rejected offer of judgment found in the record, the court *shall* add interest to that recovery. In an appropriate case, both statutes could apply; the defendant could owe interest as damages on the debt and then owe interest on the total amount based on his refusal to settle. See *Gillis* v. *Gillis,* supra, 555; *Crowther* v. *Gerber Garment Technology, Inc.,* supra, 266–67; *Perl* v. *Case,* supra, 117.

An award of interest pursuant to § 52-192a is independent of the judgment, can be calculated only after judgment has been rendered, and is awarded upon a posttrial motion. See *Gionfriddo* v. *Avis Rent A Car System, Inc.,* supra, 310 (failure to award interest under § 52-192a required posttrial supplemental order to be set aside); cf. *Perl* v. *Case,* supra, 118 (failure to award

interest under § 37-3a required judgment to be set aside). The interest awarded under § 52-192a is unrelated to the underlying debt. It is solely related to a defendant's rejection of an advantageous offer to settle before trial and his subsequent waste of judicial resources. A defendant who rejected an offer of judgment that is less than the plaintiff's ultimate recovery is subject to additional interest as a penalty for failing to terminate litigation. Section 52-192a merely uses interest calculated upon the plaintiff's recovery as a convenient measure for assessing that penalty.

Our determination that § 52-192a is a procedural rule not involving substantive issues is unaffected by seemingly contrary language in a federal case. Although the trial court found § 52-192a to be substantive law based on the holding in *Frenette* v. *Vickery,* supra, a closer reading of the case reveals no inconsistency with our conclusion that the rule is procedural in this circumstance.

In *Frenette* v. *Vickery,* supra, 1099, the plaintiffs brought suit in federal District Court in Connecticut for personal and property damages arising from an automobile accident. The plaintiffs made two offers of judgment, both rejected by the defendants, and moved for interest pursuant to § 52-192a after a jury verdict larger than either offer. Id. The defendants argued that the court should apply federal procedural law to deny an award of interest. Id. The court disagreed, ruling that in these circumstances "Conn. Gen. Stat. § 52-192a clearly creates a substantive statutory right in persons suing in Connecticut courts." (Emphasis added.) Id., 1100.

The *Frenette* court did not purport to determine whether the provisions of § 52-192a were "substantive" in an interstate choice of law setting. Rather, the court found Connecticut's offer of judgment statute to be

"substantive" for the purposes of deciding between state and federal rules under the doctrine of *Erie Railroad Co.* v. *Tomkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Thus, the court ruled that it must apply the forum state's "substantive" rule rather than the federal "procedural" offer of judgment rule, Fed. R. Civ. P. 68.

The *Frenette* court acknowledged that its determination that § 52-192a is a "substantive" rule was limited to this *Erie* context. In distinguishing between substantive and procedural federal rules, " ' "the Supreme Court has held that matters normally regarded as procedural are substantive for the purposes of *Erie* cases." ' " *Frenette* v. *Vickery,* supra, 1101, quoting 2 J. Moore, Federal Practice (2d Ed.) § 1.04 (4). The District Court held our offer of judgment statute to be substantive for the purpose of applying the rule, not avoiding it. "To hold otherwise would indeed frustrate the *Erie* goals of minimizing forum shopping in the state or federal courts and avoiding the inequitable administration of laws within a particular state." *Frenette* v. *Vickery,* supra, 1100. To hold otherwise would allow parties who have refused reasonable pretrial settlement offers to avoid paying interest on those offers "merely by a timely removal of the case to a federal court." Id.

We will not permit the defendant to avoid the consequences of his decision to ignore the plaintiff's offer of judgment merely because his contract obligations were made in another state. Section § 52-192a imposes a penalty for wasting *this* state's judicial resources. Our conclusion here that § 52-192a is an indigenous procedural device for promoting judicial economy fosters the principle of reducing forum shopping expressed in *Frenette.* All litigants in our courts should receive fair and consistent treatment regardless of their state citizenship. No litigant in our courts should be deprived

of the benefits and burdens of § 52-192a merely because the substantive issues of the underlying dispute are to be decided under the laws of a sister state. Accordingly, we hold that the trial court should have granted the plaintiff's motion for interest.

The judgment is reversed in part, the order denying interest under § 52-192a is set aside, and the case is remanded with direction to award interest in accordance with this opinion.

In this opinion the other judges concurred.