**BOULEVARD ASSOCIATES, a General Partnership, Plaintiff,**

v.

**SOVEREIGN HOTELS, INC., Daka, Inc., and Daka International, Inc., Defendants.**

**No. 90 Civ. 351 (TFGD).**

United States District Court, D. Connecticut.

Aug. 30, 1994.

Cohen & Wolf, Frederick S. Gold and Daniel F. Wolf, Danbury, CT, for plaintiff.

Coyne & Gottlieb, John E. Coyne, Boston, MA, for defendants.

## OPINION

MOTLEY, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter arises from a dispute concerning a commercial lease. The jurisdiction of this court is based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). The lease agreement between the parties calls for the application of Connecticut law. Pl.Ex. 1, § 28.3.

The issue presently before the court is the determination of damages as to each defendant.[1] Plaintiff Boulevard Associates seeks damages from defendant Sovereign Hotels for the willful breach of a commercial lease that the parties entered into in 1985. Plaintiff also seeks damages from defendant Daka, Inc. as a guarantor of Sovereign's liabilities under the lease. Finally, plaintiff seeks damages from defendant Daka International, Inc. for its tortious interference with the lease agreement.

A trial was held in this matter in June 1994, at which time the court heard the testimony of expert witnesses of both parties concerning the estimated value of plaintiff's equity interest in the leased property located at 225 Lordship Boulevard in Stratford, Connecticut at the natural termination of the lease. Based on the pleadings submitted and the evidence presented by both parties, the court awards plaintiff reliance damages of $1,134,497, punitive damages of $300,000, and costs and attorney's fees in an amount to be determined after the court has received defendants' objections to plaintiff's submission on counsel fees. Finally, plaintiff is entitled to "offer of judgment" interest in an amount computed in accordance with Connecticut General Statutes § 52–192a(b) as more fully described in this opinion.

---

1. This trial was preceded by a bifurcated trial to determine whether defendants were liable for defendant Sovereign's breach of the lease agreement. At the conclusion of a three day trial on this limited issue in January 1994, the court found defendants jointly and severally liable for the damages suffered by plaintiff as a result of the breach and by order dated April 7, 1994, ordered plaintiff to submit additional evidence to this court in support of its claim for damages. *Boulevard Associates v. Sovereign Hotels, Inc., et al.*, 852 F.Supp. 127 (D.Conn.1994) (Motley, J.) [*hereinafter Boulevard*].

## FACTS

Although this opinion assumes familiarity with the facts set forth in its prior opinion, *Boulevard,* 852 F.Supp. 127, a brief overview of the facts which pertain to plaintiff's present claim is necessary.

1. In April 1985, plaintiff Boulevard Associates ("Boulevard"), a Connecticut partnership, and defendant Sovereign Hotels ("Sovereign"), a Massachusetts corporation, entered into a ten-year lease commencing in April 1986 whereby Boulevard agreed to build a hotel on the property that Sovereign would manage. *Id.* at 129, Pl.Ex. 1, §§ 30, 3.2.

2. Pursuant to the lease, Boulevard was responsible for obtaining the financing of the hotel and actually constructing the premises. Thus, plaintiff obtained an $8,000,000 construction loan from Union Trust Company ("UTC mortgage") and used the entire proceeds to construct the hotel. *Boulevard,* 852 F.Supp. at 129.

3. In return for Boulevard's promise to build the hotel, Sovereign agreed to pay "minimum rent," "additional rent," and "percentage rent" to plaintiff commencing upon the public opening of the hotel. The minimum rent consisted of the amount necessary to pay the principal and interest ("debt service") on the UTC mortgage, which was secured by the hotel. Sovereign was required to pay the entire debt service on the UTC mortgage, regardless of whether the hotel generated sufficient revenues to cover the payments. *Id.* at 129–130.

4. In 1989, Sovereign willfully breached the lease, by refusing to make those debt service payments as required by the lease. Sovereign is, therefore, liable for the damages incurred by Boulevard as a result of the breach. *Id.* at 132.

5. After Sovereign's willful breach of the lease, Boulevard gave Sovereign a notice of default. Plaintiff then conveyed its interest in the property to UTC by quitclaim deed in lieu of foreclosure in September 1989. *Id.* at 130, Tr. 1/3/94 at 114–120 (Testimony of Peter Penczer). In addition to transferring its property interest, plaintiff assigned to UTC its claim to any unpaid rents owed by defendants prior to conveyance but separately reserved the right to pursue all causes of action that resulted from the breach of the lease agreement. *Boulevard,* 852 F.Supp. at 130; Pl.Ex. 34.

6. Defendant Daka, Inc. ("Daka"), Sovereign's parent company which is incorporated in Massachusetts, guaranteed all of Sovereign's obligations under the lease in favor of Boulevard, including, but not limited to, Sovereign's obligation to make the required debt service payments to UTC. *Boulevard,* 852 F.Supp. at 130. Daka is, therefore, jointly and severally liable with Sovereign for all damages incurred by Boulevard as a result of Sovereign's breach of the lease. *Id.* at 132.

7. Defendant Daka International, Inc. ("Daka International"), Daka's parent company which is incorporated in Delaware, was, as this court found, the catalyst and inducing cause of Sovereign's breach of the lease. Daka International induced that breach in order to protect the financial health of Daka International's consolidated corporate group. *Id.* at 134–35. Therefore, Daka International is jointly and severally liable with Sovereign and Daka for all consequential damages, other than loss of rents, incurred by Boulevard as a result of Sovereign's breach. *Id.*

8. Moreover, this court found that the conduct of all defendants was tantamount to a violation of traditional common law concepts of fairness which caused substantial injury to Boulevard by willfully and with reckless disregard violating Boulevard's rights under the lease for their own economic gain. *Id.* at 135. Therefore, all defendants are jointly and severally liable to Boulevard for violation of the Connecticut Unfair Trade Practices Act, *Conn.Gen.Stat.* 42–110a et seq. ("CUPTA") *Id.*

## DISCUSSION

Before discussing plaintiff's damage claim, it is first necessary to address defendants' argument regarding plaintiff's entitlement to damages. Defendants argue that plaintiff should not be awarded damages in this case for Sovereign's breach of the lease agreement because plaintiff failed to terminate the lease after the breach. Def.Concl.Law. at 9–

10. Defendants further argue that termination of the lease would have given rise to a cause of action for damages by plaintiff against defendants. Instead of terminating the lease, as required by Connecticut law, *Rokalor v. Connecticut Eating Enterprises,* 18 Conn.App. 384, 558 A.2d 265 (1989), defendants claim that plaintiff assigned the lease to UTC, thereby continuing defendants' obligations thereunder to pay rent.

In *Rokalor,* the Connecticut Appellate Court determined whether a landlord could sue to recover unpaid rents from a defaulting tenant after the landlord had terminated the lease. *Id.* As Boulevard assigned its right to future rents, it is undisputed that plaintiff is no longer entitled to unpaid rents under the lease in this case. However, notwithstanding its assignment, this court has already found that plaintiff expressly reserved its right under § 9.0 of the lease to sue defendants for "any and all consequential and incidental damages" arising from defendants' breach. *Boulevard,* 852 F.Supp. at 130. Thus, unlike the plaintiff in *Rokalor,* Boulevard is seeking to recover damages resulting from the breach of the lease agreement, damages to which it is fully entitled under established principles of contract law.

■ Furthermore, Connecticut courts have long held that the institution of a lawsuit by the landlord for damages resulting from the tenant's breach of the lease manifests an intention to terminate the lease. As the court held in *Danpar Associates v. Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 445, 438 A.2d 708, 709 (1980), where "the plaintiff [chooses] to bring an action for damages for breach of the lease, [such action] manifest[s] an intention to terminate the lease." (*citing Sagamore Corporation v. Willcutt,* 120 Conn. 315, 318, 180 A. 464 (1935)).

■ Plaintiff filed its complaint in this action on July 19, 1990, alleging consequential damages, tortious interference with the lease agreement, and violation of the Connecticut Unfair Trade Practices Act ("CUPTA"). As such, plaintiff's actions certainly manifest to this court, even if not to defendants, its intention to terminate the lease with Sovereign and sue for consequential damages, CUPTA violations, and tortious interference. Accord-

ingly, defendants argument is without merit and is disregarded for purposes of this opinion.

## Consequential Damages under Contract Law

■ As plaintiff has proven that defendants willfully breached the lease and are jointly and severally liable for damages, the court must determine the appropriate measure of damages to award plaintiff other than the loss of rent. Generally, the measure of damages for a breach of contract is the actual loss sustained by reason of the breach, which is the monetary value of what the promisee would have made if the contract had been performed, less the proper deductions. 22 Am.Jur.2d, Damages § 45; *Rowan Construction Corp. v. Hassane,* 17 Conn.App. 71, 80, 549 A.2d 1085, 1089 (1988).

■ Normally, the damages award is designed to place the injured party in the same position in which he would have been had the contract been performed. *West Haven Sound Development Corp. v. West Haven,* 201 Conn. 305, 319, 514 A.2d 734, 742 (1986); *Steeltech Building Products, Inc. v. Edward Sutt Associates, Inc.,* 18 Conn.App. 469, 472, 559 A.2d 228, 230 (1989). However, consequential damages which would have been reasonably foreseeable at the time the agreement is made are also recoverable. *See, L.F. Pace & Sons, Inc. v. The Travelers Indemnity Company,* 9 Conn.App. 30, 40, 514 A.2d 766, 772, *cert. denied,* 201 Conn. 811, 516 A.2d 886 (1986) ("[consequential] damages are not recoverable where the party in breach could not reasonably have foreseen such damage as a probable result of the contract at the time the contract was made."). Finally, damages must be determined at the time the breach occurs. *Kevin Roche–John Dinkeloo & Associates v. New Haven,* 205 Conn. 741, 749, 535 A.2d 1287, 1291 (1988); *Gordon v. Indusco Management Corporation,* 164 Conn. 262, 273, 320 A.2d 811, 819 (1973).

In deciding this case, this court found the decision of the Connecticut Supreme Court in *West Haven Sound Development Corp. v. West Haven* particularly persuasive. In

*West Haven*, the court had to decide whether plaintiff was entitled to recover damages from a city agency for an alleged breach of contract. 201 Conn. at 306, 514 A.2d at 735. Pursuant to the contract entered into between the parties, plaintiff constructed a restaurant in an area which had been designated by the city of West Haven for commercial redevelopment.[2] After the voters defeated the overall redevelopment plan in a subsequent referendum, city officials failed to redevelop the area as agreed in its contract with the redevelopers, thereby breaching the contract with plaintiff and causing plaintiff's restaurant to fail. *Id.* at 308, 514 A.2d at 736.

During the ensuing trial, the court allowed a certified public accountant to testify as an expert witness on the future profits that plaintiff's restaurant would have earned if defendant had not breached its contract to redevelop the Savin Rock area. *Id.* at 316, 514 A.2d at 740. Using certain econometric projections as to future revenues and costs, the expert predicted the future profits that the restaurant would likely have earned had the redevelopment of the area proceeded as originally contemplated by the parties. *Id.* at 317, 514 A.2d at 740. He then computed the net present value of those future earnings to determine the value of plaintiff's restaurant at the time of the breach. *Id.*

In denying the city's challenges to the expert's determinations, the Connecticut Supreme Court ruled that the trial court properly allowed the expert to testify "as to the restaurant's value based on the economic situation as it reasonably appeared before the breach of contract," notwithstanding the fact that the business operated at a loss after the breach occurred and closed approximately 2 years later. *Id.* at 317, 514 A.2d at 741. The expert was not limited to the actual operating history of the business provided his estimates were based on standard valuation pro-

cedures. *Id.* at 320–21, 514 A.2d at 742. However, the court rejected plaintiff's claim that it was entitled to damages for the full value that its business would have had had the breach not occurred without consideration of the value of the restaurant after the breach. *Id.* at 323, 514 A.2d at 744. In reaching its determination, the court noted:

> [W]e think that where a plaintiff in a contract action seeks to recover for the alleged loss of its business, and where the plaintiff elects to value its business by a method which relies on the capitalization of projected earnings (the capitalization of earnings method and its many variants), the plaintiff must place two values into evidence. The first value is the value of the business based on the capitalized value of the profits the business would have earned if not for the breach. The second is the value of the business based on the capitalized value of the profits the business would reasonably be capable of producing after the breach.

201 Conn. at 325, 514 A.2d at 745, n. 5.

In this case, Boulevard seeks damages of $1,700,000, which represents the present value of its equity interest in the hotel at the natural termination of the lease had Sovereign continued to manage the hotel and comply with the terms of the lease. Pl.Prop.Find.Fact and Concl.Law. at ¶ 8. Plaintiff's expected equity—its expectation interest—in the hotel was determined by its expert witness, Mr. Daniel Hanrahan. Hanrahan is a professional appraiser and a designated Member of the Appraisal Institute, who demonstrated considerable experience in the appraisal of hotel properties, particularly hotels operating in the Northeastern United States.

Hanrahan determined plaintiff's equity under the capitalization of earnings method which consisted of the following: (1) Hanrahan projected the revenue—or net operating

---

**2.** As the court stated:

> Under the terms of the contract, the defendant [West Haven Redevelopment Agency] conveyed to the plaintiff a parcel of land by a deed containing the condition that the land may be used in accordance with the defendant's urban renewal plan (the plan) for the Savin Rock area of West Haven. The plan ... provided that a substantial portion of the land in the Savin Rock area would be developed for commercial, recreational and apartment use. The parties to the contract expressly agreed that there could be no modification of the plan affecting the rights of the redevelopers without their consent.
>
> 201 Conn. at 307, 514 A.2d at 736.

income ("NOI")—that the hotel would have generated over the remaining terms of the lease until its termination in 1996; (2) Hanrahan capitalized the hotel's projected NOI at the time of the termination of the lease in 1996 at a capitalization rate of 11% to determine the hotel's value at that time (Tr. 6/20/94 at 122–23, 127, 134); (3) Hanrahan subtracted from the hotel's projected 1996 value (as determined in step 2 above) the 1996 principal balance of the UTC mortgage, assuming that Sovereign made all debt service payments required by the lease, to determine plaintiff's prospective 1996 equity in the hotel of $3,100,000 (Tr. 6/20/94 at 73, 150–151); and (4) Hanrahan discounted the net 1996 equity to "1989 dollars" of $1,700,000 using a discount rate of 10% (Tr. 6/20/94 at 152–54).

While plaintiff requests damages for the present value of its projected equity interest, the *West Haven* Court held that the inquiry cannot stop there. This court must also determine whether plaintiff had an equity interest in the property *after* the breach before properly awarding damages.

Clearly, Boulevard retained no valuable assets after the breach. On September 5, 1989, plaintiff transferred all existing equity in the property located at 225 Lordship Boulevard to Union Trust by deed in lieu of foreclosure and assigned the lease to UTC. Pl.Ex. 33. There is no evidence that plaintiff had any extensive experience in the hotel business nor did the partnership have a recognizable name which could be sold as a franchise. Thus, under the *West Haven* formula, plaintiff had no "after breach" equity in the property.

On the other hand, it is quite possible that plaintiff obtained a very valuable economic benefit after the breach—the ability to walk away from the hotel "free and clear" of any remaining obligation on the UTC mortgage. Pl.Ex. 34. As Sovereign was only paying interest on the mortgage before it breached the lease, 852 F.Supp. at 130, n. 1, the principal balance on the UTC mortgage remained unchanged at $8,000,000 at the time of the breach. Plaintiff did not present any evidence establishing the value of the hotel or

the property as compared to the outstanding debt on the UTC mortgage as of September 5, 1989. In the absence of such evidence, it is impossible to determine whether the partnership sustained a loss on its property transfer or received a significant economic benefit after Sovereign's breach that exceeded its estimated expectation interest of $1,700,000. Thus, the court cannot adequately assess the reasonableness of plaintiff's claim on this ground and finds that an award of expectation damages in this case is too speculative. Plaintiff's claim for the present value of its equity interest is, therefore, denied.

■ Notwithstanding this finding, the court finds that plaintiff is entitled to damages for the expenditures it incurred in reliance on the contract. It is well established in contract law that as an alternative to awarding a party its expectation interest, an injured party may recover any expenditures that it incurred in preparation for, part performance of, or otherwise in reliance on the contract, commonly referred to as the party's reliance interest. Restatement (Second) of Contracts § 344(b) (1981). Thus, "courts will allow the recovery of such expenditures if the breach of the contract renders those expenditures valueless to the plaintiff, lost profits cannot be awarded because they appear speculative, and those expenses were foreseeable by the defaulting party at the time the contract was made." 22 Am.Jur.2d, *Damages*, § 595; *L.F. Pace & Sons, supra*, 9 Conn.App. at 40, 514 A.2d at 772; *Applied Data Processing, Inc. v. Burroughs Corp.*, 394 F.Supp. 504, 509–10 (D.Conn.1975) (in determining reliance damages, trial court first determined whether damages claimed by injured party were reasonably foreseeable and "ordinar[ily] follow[ed]" from the breach of the lease agreement).

■ As an alternative to its expectation interest, plaintiff seeks damages of $1,134,-497, which represents additional expenses incurred by the partnership exceeding the $8,000,000 UTC mortgage loan. Pl.Ex. 40(A); Tr. 6/21/94 at 133 (Penczer Testimo-

ny).[3] The court is persuaded by the evidence introduced at trial that plaintiff incurred these expenses not only to fulfill its obligations under the lease agreement, but in reliance on Sovereign's promise to manage the hotel in accordance with the terms of the lease. Moreover, since plaintiff transferred the hotel to UTC by quitclaim deed in lieu of foreclosure shortly after defendants' breach, it is obvious to the court that these expenditures are valueless to plaintiff. Accordingly, plaintiff is awarded reliance damages of $1,134,497.

## PUNITIVE DAMAGES

Plaintiff also asks this court to assess punitive damages against defendants for violating the Connecticut Unfair Trade and Practices Act ("CUPTA"). As the court stated in its earlier opinion:

> This court finds that plaintiff has introduced sufficient evidence at trial to find a CUPTA violation. It is undisputed that defendants, notwithstanding the losses they allegedly incurred under the lease, willfully breached the lease when Sovereign stopped paying the minimum rent in May 1989. Moreover, we are persuaded by the evidence presented that Sovereign's decision to breach the lease was caused by Daka International's desire to protect the financial health of its corporate group. In light of this evidence, this court finds that defendants' actions have offended traditional common law concepts of fairness and have caused substantial injury to plaintiff. Thus, defendants are jointly and severally liable to plaintiff for an amount of damages which shall be determined by this court during the damages phase of this trial.

852 F.Supp. at 135.

■ Under Connecticut common law, "punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional or wanton violation of those rights." *Lenz v. Assurance Company*, 42 Conn.Supp. 514, 630 A.2d 1082 (1993). An award of punitive damages under common law is limited to the costs of litigation including attorney's fees less taxable

costs. *Id.; Champagne v. Raybestos–Manhattan, Inc.*, 212 Conn. 509, 532, 562 A.2d 1100, 1113 (1989).

While § 42–110g adopts the same standard for awarding punitive damages, it expands the nature of such damages to serve both compensatory and deterrence purposes. As the *Lenz* court aptly stated:

> The equivalent of common law punitive damages was provided for in [*Conn.Gen.Stat.*] § 42–110g(d), which allows an award of costs and attorney's fees. The legislature departed from the narrow scope of common law punitive damages, however, when it adopted § 42–110g(a) of CUPTA, which provides that the "court may, in its discretion, award punitive damages ... as it deems necessary and proper." (citation omitted) This statutory provision allows for punitive damages based on a theory of deterrence, whereas the common law premise of such an award is compensation.... Once deterrence rather than compensation becomes the focus of CUPTA punitive damages, however, then "the financial standing of the party against whom damages are sought becomes relevant and material." 42 Conn.Supp. at 514, 630 A.2d at 1083.

As such, "the plaintiff who establishes CUPTA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law ... [including] punitive damages and attorney's fees." *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 617, 440 A.2d 810, 815 (1981), *aff'd*, 192 Conn. 252, 470 A.2d 1216 (1984).

Section 42–110g does not specify how punitive damages are to be measured; however, the award should serve the broad remedial goals of "eliminating or discouraging 'unfair methods of competition and unfair or deceptive acts or practices.'" *Bailey Employment System, Inc. v. Hahn*, 545 F.Supp. 62, 73 (D.Conn.1982), *aff'd*, 723 F.2d 895 (2d Cir. 1983) (*quoting, Hinchliffe*, 184 Conn. at 617, 440 A.2d at 815). Moreover, the award of such damages rests in the discretion of the court, § 42–110g(a), and the denial of such an award is not to be disturbed on appeal "un-

---

**3.** Peter Penczer, a general partner in Boulevard Associates, testified that these expenses were incurred in constructing and developing the hotel. Tr. 6/21/94 at 116–33.

less the abuse is manifest or injustice appears to have been done." *Gargano v. Heyman,* 203 Conn. 616, 622, 525 A.2d 1343, 1347 (1987).

██ Plaintiff seeks an award of punitive damages against all defendants for their participation in Sovereign's willful breach of the lease, especially Daka International for its tortious interference with the contract between plaintiff and Sovereign. As plaintiff properly states, the court did find that each of the defendants violated CUPTA by their willful indifference to the rights of plaintiff. Such a finding, however, does not automatically mandate an award of punitive damages. As the court has already found, punitive damages awarded under CUPTA can serve either a compensatory or a deterrent purpose, *Lenz, supra,* 42 Conn.Supp. at 514, 630 A.2d at 1083, but recovery of damages under more than one theory for the same injury is barred. *Boulevard,* 852 F.Supp. at 135.

Since the court has already awarded reliance damages as compensation for plaintiff's loss, it is unnecessary to award further compensatory damages under CUPTA against any defendant. On the other hand, Daka International's tortious interference caused Sovereign to willfully breach the lease with reckless disregard of the injuries that plaintiff would suffer and actually did suffer as a result of its actions. Since Daka International's actions were the catalyst for the breach which caused plaintiff's loss, the court finds it appropriate to assess punitive damages of $300,000 against Daka International to serve as a deterrent against similar conduct in the future. *Nielsen v. Wisniewski,* 32 Conn.App. 133, 138, 628 A.2d 25, 28 (1993).

According to Daka International's 1993 Annual Report filed with the Securities and Exchange Commission (Form 10K), the company's net worth at the end of its 1993 fiscal year was $26 million dollars. Considering Daka International's net worth and the egregious nature of its actions in this case, the court finds the award of $300,000 in punitive damages fully justified. *Lenz,* 42 Conn.Supp. at 514, 630 A.2d at 1082. Without Daka International's insistence, however, it is unclear whether Sovereign or Daka would have

willfully breached the lease agreement. Accordingly, the court does not find an award of punitive damages for deterrence purposes against either Sovereign or Daka justified in this case.

## ATTORNEY'S FEES

██ Although plaintiff is entitled to an award of attorney's fees under CUPTA, *Hinchliffe,* 184 Conn. at 617, 440 A.2d at 815, the court finds it equally entitled to such costs under the very terms of the lease agreement. As Article 9.0 of the lease provides in pertinent part:

> The Tenant shall indemnify and hold harmless the Landlord against all liabilities, damages and other expenses, including reasonable attorneys' fees, which may be imposed upon, incurred by, or asserted against the Landlord by reason of any of the following occurring during the terms of this Lease:

> \*   \*   \*   \*   \*   \*

> (b) Any failure on the part of the Tenant to perform or comply with any covenant required to be performed or complied with by the Tenant hereunder.

> Pl.Ex. 1.

As the court has already found that Sovereign willfully breached the lease agreement by intentionally defaulting on its rent obligation, plaintiff is fully entitled to recover reasonable costs and attorney's fees under the lease.

## INTEREST

Plaintiff further seeks an award of prejudgment interest under Connecticut General Statutes § 37–3a ("*Conn.Gen.Stat.*") and "offer of judgment" interest under *Conn.Gen. Stat.* § 52–192a(b).

A. *Prejudgment Interest*

*Conn.Gen.Stat.* § 37–3a provides in pertinent part:

> Except as provided in § 37–3b and 52–192a, interest at the rate of ten percent a year, and no more, may be recovered and allowed in civil actions ... as damages for

the detention for money after it becomes payable. . . .

Section 37–3a allows the court, in its discretion, to award prejudgment interest for the wrongful detention of money. *Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811, 817 (2d Cir.1990) (*citing Nor'easter Group, Inc. v. Colossale Concrete, Inc.,* 207 Conn. 468, 482, 542 A.2d 692, 700 (1988)); *Paine Webber Jackson and Curtis, Inc. v. Winters,* 22 Conn.App. 640, 641, 579 A.2d 545, 551 (1990). Among the factors which the court should consider in deciding to award prejudgment interest are: (1) whether the detention of the money is or is not wrongful under the circumstances; (2) whether the sum recovered was a liquidated amount; and (3) whether the party seeking prejudgment interest had "diligently presented" the claim throughout the course of the proceedings. *Prime Management,* 904 F.2d at 817 (citations omitted). Finally, any award under this section is subject to reversal only upon a showing of an abuse of discretion. *Harris Calorific Sales Co. v. Manifold Systems, Inc.,* 18 Conn.App. 559, 565, 559 A.2d 241, 244 (1989).

Defendant argues that plaintiff is not entitled to prejudgment interest because the damages that plaintiff claims—namely, its expectation interest or alternatively, its reliance interest—are not "money detained after it becomes payable." Def.Concl.Law. at 23–24. According to defendants, plaintiff could obtain interest only if it claimed unpaid rents due under the lease, a right which plaintiff assigned to UTC. *Id.* This court agrees. Furthermore, the court finds that plaintiff has failed to demonstrate that it is entitled to prejudgment interest because the criteria set forth above have not been clearly met. Accordingly, plaintiff's claim for prejudgment interest is denied.

B. *"Offer of Judgment" Interest*

*Conn.Gen.Stat.* § 52–192a(b) provides:

After trial the court shall examine the record to determine whether the plaintiff made an "offer of judgment" which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his "offer of judgment," the court shall add to the amount recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the "offer of judgment" was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the "offer of judgment" was filed. . . .

Unlike § 37–3a (prejudgment interest), an award of interest under § 52–192a(b) is punitive in nature, and is meant to serve the purpose of promoting "fair and reasonable compromise of litigation without trial. . . ." *Crowther v. Gerber Garment Technology, Inc.,* 8 Conn.App. 254, 267, 513 A.2d 144, 151 (1986). Interest is mandated when the amount recovered equals or exceeds the offer of judgment and that amount can include interest and attorney's fees, *Id.* at 270–71, 513 A.2d at 153, as well as punitive damages. *Id.; Gionfriddo v. Avis Rent a Car System, Inc.,* 192 Conn. 301, 307, 472 A.2d 316, 319 (1984) (§ 52–192a(b) interest can be recovered on treble damage award).

Clearly, an award of interest under § 52–192a(b) is warranted in this case. The record indicates that plaintiff filed its complaint on July 16, 1990. On January 14, 1992, Boulevard filed offers of judgment against each defendant in the amount of $750,000. It is undisputed that each offer was rejected by defendants. Since plaintiff's present recovery exceeds the offer of $750,000 made to defendants within eighteen months of the date the complaint was filed, plaintiff is entitled to an award of interest computed annually at the statutory rate of 12%. Such interest shall be computed on plaintiff's award of reliance damages, punitive damages, and attorney's fees from the date the complaint was filed until the date of the order accompanying this opinion.

## CONCLUSION

In summary, the court awards plaintiff reliance damages of $1,134,497 in addition to punitive damages of $300,000 and attorney's fees which shall be determined at a later date. Plaintiff is also awarded "offer of judgment" interest at the statutory rate of 12% computed annually on the award of reliance damages, punitive damages and attorney's fees beginning from the date that plaintiff filed its complaint until the date of the order accompanying this opinion. Defendants are jointly and severally liable to plaintiff for the awards of reliance damages and costs and attorney's fees, as adjusted for "offer of judgment" interest computed under § 52–192a(b). Defendant Daka International is solely liable for the award of punitive damages, as adjusted for "offer of judgment" interest.

Since plaintiff has already complied with the rules of this court by filing a detailed statement of costs and attorney's fees (Pl.Ex. 45), defendants must submit their objections to plaintiff's submission within four weeks of this ruling and the parties are to appear before this court on Monday, October 17, 1994 at 10:00 a.m. in courtroom 4 of the Federal District Courthouse in New Haven Connecticut for a hearing on the matter of attorney's fees if same are disputed by defendants.