******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## DEUTSCHE BANK AG *v.* SEBASTIAN HOLDINGS, INC., ET AL.
### (AC 47591)

Moll, Clark and Wilson, Js.

*Syllabus*

The defendants, the prevailing parties in the underlying action seeking to enforce a foreign judgment against them, appealed from the trial court's judgment denying their motions for attorney's fees. The defendants claimed that the court improperly determined that the issue of whether they were entitled to attorney's fees was a procedural issue governed by Connecticut law, which follows the American rule, pursuant to which each party is responsible for its own attorney's fees unless a statute or contract provides otherwise, rather than a substantive issue governed by the law of the foreign jurisdiction, which follows the English rule, pursuant to which a prevailing party generally is entitled to its litigation expenses, including attorney's fees. *Held*:

The trial court properly denied the defendants' motions for attorney's fees on the ground that their request for attorney's fees was a procedural matter governed by Connecticut law, as the defendants did not dispute that the rule of the foreign jurisdiction allowing for the recovery of attorney's fees by a prevailing party was not specific to the cause of action at issue in this case but applied generally to all civil actions.

Argued September 17—officially released November 11, 2025

*Procedural History*

Action seeking, inter alia, enforcement of a foreign judgment, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the Complex Litigation Docket, where the case was tried to the court, *Hon. Charles T. Lee*, judge trial referee; judgment for the defendants, from which the plaintiff appealed; thereafter, the defendants filed a motion for attorney's fees; subsequently, the Supreme Court affirmed the trial court's judgment, and the defendants filed a second motion for attorney's fees; thereafter, the court, *Hon. Charles T. Lee*, judge trial referee, denied the defendants' motions for attorney's fees, and the defendants appealed to this court. *Affirmed*.

*Dana M. Hrelic*, with whom were *Monte E. Frank* and *Meagan A. Cauda*, for the appellants (defendants).

*David G. Januszewski*, with whom were *Thomas D. Goldberg* and, on the brief, *Sheila C. Ramesh*, pro hac vice, *Sesi V. Garimella*, pro hac vice, and *John W. Cerreta*, for the appellee (plaintiff).

*Opinion*

CLARK, J. The plaintiff, Deutsche Bank AG, brought this action against the defendants, Sebastian Holdings, Inc. (SHI), and Alexander Vik, seeking to enforce an approximately $243 million foreign judgment (English judgment) rendered against SHI by an English court and to pierce the corporate veil of SHI in order to hold Vik personally liable for that judgment. The trial court, applying the substantive law of Turks and Caicos Islands (TCI), rendered judgment in favor of the defendants, and our Supreme Court affirmed that judgment. See *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, 346 Conn. 564, 604, 294 A.3d 1 (2023). Thereafter, the trial court denied the defendants' postjudgment motions seeking approximately $11.5 million in prevailing party attorney's fees incurred in defense of this action, concluding that the issue of attorney's fees was a procedural matter governed by Connecticut law, which does not permit the recovery of such fees in this case. On appeal, the defendants claim that the court erred in denying their motions because the issue of whether they are entitled to attorney's fees is governed by TCI law. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal.[1] SHI is a corporation organized under the laws of TCI, and Vik is its sole shareholder

---

[1] Our Supreme Court's decision in *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, supra, 346 Conn. 564, sets forth a detailed factual and procedural background concerning the events giving rise to this case.

and director. In November, 2006, the plaintiff and SHI entered into a foreign exchange prime brokerage agreement and related agreements, pursuant to which the plaintiff acted as SHI's prime broker and intermediary in connection with SHI's foreign currency trading activities. In and around October, 2008, SHI accumulated substantial losses in connection with those activities. In January, 2009, the plaintiff commenced an action against SHI in the Queen's Bench Division of the High Court of Justice of England and Wales to collect amounts owed as a result of unpaid margin calls. In November, 2013, the English judgment was rendered against SHI and in favor of the plaintiff. The following month, the plaintiff commenced the present action seeking a declaratory judgment to pierce SHI's corporate veil and to hold Vik personally liable for the English judgment as SHI's alter ego and an order enforcing the judgment against Vik pursuant to the Uniform Foreign Money-Judgments Recognition Act, General Statutes § 50a-30 et seq. On September 7, 2021, after lengthy pretrial, trial, and interlocutory appellate proceedings,[2] the court, *Hon. Charles T. Lee*, judge trial referee, applying TCI law, declined to pierce SHI's corporate veil and rendered judgment in favor of the defendants. The plaintiff appealed from the judgment of the trial court to this court, and our Supreme Court thereafter transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. See *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, supra, 346 Conn.

---

[2] In August, 2015, the parties filed motions for summary judgment, with the defendants claiming that res judicata barred the present action and the plaintiff claiming that the findings underlying the English judgment operated to collaterally estop Vik from denying he was the alter ego of SHI. See *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, 174 Conn. App. 573, 578, 166 A.3d 716 (2017), aff'd, 331 Conn. 379, 204 A.3d 664 (2019). The trial court denied both motions; see id.; this court affirmed that judgment; see id., 592; and our Supreme Court affirmed this court's judgment in a per curiam opinion. See *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, 331 Conn. 379, 384, 204 A.3d 664 (2019).

568 n.2. In that appeal, the plaintiff claimed, inter alia, that the trial court had erred by applying TCI law to its veil piercing claim, that either New York or Connecticut law should have applied, and that, under either state's law, it would have prevailed on its veil piercing claim. See id., 589.

On October 7, 2021, while the plaintiff's appeal was pending, the defendants filed a motion seeking approximately $10.5 million in attorney's fees and costs. The defendants argued that their entitlement to attorney's fees was governed by TCI law and that TCI law follows the so-called "English rule," pursuant to which a prevailing party generally is entitled to its litigation expenses, including attorney's fees. See *Fleming* v. *Garnett*, 231 Conn. 77, 93 n.12, 646 A.2d 1308 (1994). The plaintiff filed a memorandum in opposition to the defendants' motion, arguing, inter alia, that, under Connecticut choice of law rules, the issue of attorney's fees was a procedural matter governed by Connecticut law.[3] The plaintiff further argued that, because Connecticut follows the "American rule," pursuant to which each party is responsible for its own attorney's fees unless a statute or contract provides otherwise; see id., 93–94; the defendants were not entitled to attorney's fees as prevailing parties. On February 9, 2022, the parties entered into a stipulation, which was subsequently entered as a court

---

[3] The plaintiff also contended that the defendants had waived any claim for attorney's fees by not raising it prior to trial and that, even if the issue of attorney's fees was a matter of substantive law, the principle of depecage, pursuant to which "different issues in a single case . . . may be decided according to the substantive law of different states"; (internal quotation marks omitted) *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 252 Conn. 774, 783 n.5, 750 A.2d 1051 (2000); required the application of Connecticut law to the defendants' claim for attorney's fees. The trial court did not address those contentions because it concluded that, under Connecticut choice of law rules, the defendants' claim for attorney's fees was procedural. Because the plaintiff has not raised either claim as an alternative ground for affirmance, we do not address those issues in this opinion.

order, staying the defendants' motion pending resolution of the plaintiff's appeal.

On May 30, 2023, our Supreme Court issued an opinion affirming the trial court's judgment in favor of the defendants. See *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, supra, 346 Conn. 567, 604. The court declined to resolve the issue of whether the trial court had properly concluded that TCI law governed the plaintiff's veil piercing claim. The court concluded, rather, that "the trial court's factual findings foreclose [the plaintiff's] claim under New York, Connecticut, and TCI law, and, therefore, any error in the trial court's choice of law analysis or application of TCI law was harmless."[4] Id., 592.

On June 28, 2023, the defendants filed a second motion for an award of attorney's fees, seeking an additional award of approximately $1 million for fees incurred in postjudgment proceedings, bringing the total amount sought to approximately $11.5 million. The court, *Hon. Charles T. Lee*, judge trial referee, heard oral argument on the defendants' motions for attorney's fees on December 19, 2023.

On April 4, 2024, the court issued a memorandum of decision in which it concluded that the defendants were not entitled to attorney's fees. The court first explained that "[t]he ordinary rule is that where a cause of action arising in another state is asserted in our courts, we look to the laws of that state to determine all matters of substance involved in it, but that matters of procedure are governed by our own law . . . ." (Internal quotation marks omitted.) In addressing whether the defendants' claim for attorney's fees was a matter of

---

[4] In the present appeal, the plaintiff does not claim, as an alternative basis for affirmance, that Connecticut law governs the substantive issues in the case. Accordingly, we assume for purposes of this appeal that TCI law governs the substantive issues in the case.

substance or procedure, the court relied on *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 579 A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990) (*Paine Webber*), in which this court concluded that our offer of compromise statute, General Statutes (Rev. to 1989) § 52-192a; see footnote 6 of this opinion; was a matter of procedure governed by Connecticut law. The court construed *Paine Webber* to stand for the principle "that a procedural issue does not involve an evaluation or inquiry into the merits of the case but rather deals with the enforcement of the remedy or provision of redress . . . ." Applying that principle to the defendants' claim for attorney's fees, the court determined that "the requests for fees can be ruled upon without examination of the substantive decision regarding piercing the corporate veil because [the requests] do not relate to the merits of the case, but to the means of enforcing the litigants' rights and obtaining redress. As a result, a Connecticut court will regard this request for attorney's fees and costs to be procedural." Because Connecticut follows the American rule and the defendants did not rely on any statute or contractual provision that would alter that rule, the court denied the defendants' motions. This appeal followed.

On appeal, the defendants claim that the court erred in denying their motions for attorney's fees. The defendants do not dispute that, under a choice of law analysis, our courts apply Connecticut law to procedural issues even when the substantive law of another jurisdiction applies to the cause of action. The defendants argue, however, that their request for attorney's fees is a substantive matter that is governed by the law of TCI. The plaintiff contends that the court properly concluded that a request for attorney's fees is a procedural matter governed by Connecticut law. We agree with the plaintiff.

The following standard of review and legal principles govern the plaintiff's claim. "It is well settled that [c]hoice of law questions are subject to de novo review." (Internal quotation marks omitted.) *Gershon* v. *Back*, 346 Conn. 181, 194, 288 A.3d 602 (2023). We apply Connecticut's choice of law rules to determine which jurisdiction's law governs the defendants' request for attorney's fees. See *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 599, 211 A.3d 976 (2019) ("[i]n determining the governing law, a forum applies its own [conflict of laws] rules" (internal quotation marks omitted)). "The ordinary rule is that where a cause of action arising in another [jurisdiction] is asserted in our courts, we look to the laws of that [jurisdiction] to determine all matters of substance involved in it, but that matters of procedure are governed by our own law . . . ." (Internal quotation marks omitted.) *Gershon* v. *Back*, 201 Conn. App. 225, 250, 242 A.3d 481 (2020), aff'd, 346 Conn. 181, 288 A.3d 602 (2023). Our Supreme Court, citing the Restatement (Second) of Conflict of Laws, explained the rationale of this rule as follows: " '[T]he forum has compelling reasons for applying its own rules' to procedural issues, even if the substantive law of another jurisdiction applies, because, 'in matters of judicial administration, it would often be disruptive or difficult for the forum to apply the local rules of another state. The difficulties involved in doing so would not be repaid by a furtherance of the values that the application of another state's local law is designed to promote.' . . . Additionally, '[p]arties do not usually give thought to matters of judicial administration before they enter into legal transactions,' and, therefore, 'the parties have no expectations as to such eventualities, and there is no danger of unfairly disappointing their hopes by applying the forum's rules in such matters.' . . . Even if the application of the forum's procedural rule would alter the outcome of a case, 'the forum will usually apply

its own rule if the issue primarily concerns judicial administration.' " (Citations omitted.) *Reclaimant Corp.* v. *Deutsch*, supra, 604, quoting 1 Restatement (Second), Conflict of Laws § 122, comment (a), pp. 350–51 (1971).

"The distinction between procedural and substantive laws is well settled. Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *Weber* v. *U.S. Sterling Securities, Inc.*, 282 Conn. 722, 738–39, 924 A.2d 816 (2007). "Where the [law at issue] is not substantive, i.e., not directed to the right itself, but rather to the remedy, it is generally considered a distinctly procedural matter." (Internal quotation marks omitted.) *Gershon* v. *Back*, supra, 201 Conn. App. 250.

The issue before us—namely, whether the availability of attorney's fees is a procedural or substantive issue for choice of law purposes—is an issue of first impression in this state, and the parties agree that this court's decision in *Paine Webber* provides the proper framework for deciding that issue.[5] We therefore begin our analysis with a discussion of that case.

[5] The defendants' principal appellate brief does not address the applicability of *Paine Webber* but, instead, relies primarily on our Supreme Court's decision in *Gershon* v. *Back*, supra, 346 Conn. 181, a number of Superior Court decisions, and precedent from other jurisdictions. In their reply brief, responding to the plaintiff's contention that the trial court properly applied *Paine Webber* in concluding that the issue of attorney's fees was a procedural issue, the defendants argued that the plaintiff's reliance on that case was "misplaced" and that, in any event, *Paine Webber* actually supports the defendants' position. At oral argument, however, the defendants argued that *Paine Webber* provides a "clear template" for this court to follow and stated definitively that they were asking us to apply the framework set forth in *Paine Webber* in deciding this case.

In *Paine Webber*, this court addressed whether General Statutes (Rev. to 1989) § 52-192a,[6] which provides a prevailing party the right to an award of interest on a judgment that exceeds its pretrial offer of compromise (offer of compromise interest), was procedural or substantive for choice of law purposes. See *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, supra, 22 Conn. App. 648–49. After the plaintiff prevailed on its breach of contract claim, the trial court concluded that § 52-192a did not apply because New York law, which governed the plaintiff's breach of contract claim, did not permit recovery of such interest under the circumstances. Id., 649–50. The plaintiff appealed, arguing that, under Con-

[6] At the time this court decided *Paine Webber*, General Statutes (Rev. to 1989) § 52-192a provided in relevant part: "(a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. . . . If the 'offer of judgment' is not accepted within thirty days, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. . . .

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date . . . the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. . . . The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

The statute has been amended several times since *Paine Webber* was decided, including to refer to an offer made under the statute as an "offer of compromise" as opposed to an "offer of judgment." See Public Acts 2005, No. 05-275, § 4. Although the current revision of the statute outlines the same basic procedures, due to the extent of the revisions in the statutory text, we refer to the revision of the statute in effect at the time the case was decided. Accordingly, hereinafter, all references to § 52-192a in this opinion are to the 1989 revision of the statute.

necticut choice of law rules, § 52-192a is a procedural rule that should apply notwithstanding that New York law governed the substantive issues in the case. Id., 649.

On appeal, this court reversed the judgment of the trial court, concluding that § 52-192a is a procedural rule that applies even though New York law governed the plaintiff's cause of action because the determination of whether to award offer of compromise interest has no connection with the substantive law governing the underlying claims. See id., 655–56. As we explained, the ultimate question in assessing whether § 52-192a was procedural or substantive for choice of law purposes was "whether an award of interest following a rejected offer of judgment requires a determination of the substantive issues of a case." Id., 653. Analyzing that question, we concluded that § 52-192a is not substantive because its application "does not depend on an analysis of the underlying circumstances of the case or a determination of the facts" but, instead, is based only on whether the prevailing party recovered more than the amount included in the offer of compromise. Id. We explained that "[a]n award of interest pursuant to § 52-192a is independent of the judgment, can be calculated only after judgment has been rendered . . . is awarded upon a posttrial motion . . . [and] is unrelated to the underlying debt." Id., 653–54.

We contrasted § 52-192a with our prejudgment interest statute, General Statutes § 37-3a, which provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . *as damages for the detention of money after it becomes payable.*"[7] (Emphasis added.) We explained

---

[7] Although § 37-3a has been amended by the legislature since *Paine Webber* was decided; see, e.g., Public Acts 2003, No. 03-266; those amendments are immaterial to this appeal. Accordingly, we refer to the current revision of the statute.

that § 37-3a is substantive because it "requires an analysis of the merits of the underlying claim." *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, supra, 22 Conn. App. 651–52. Specifically, § 37-3a "allows the court, in its discretion, to award prejudgment interest for the *wrongful* retention of money." (Emphasis added.) Id., 652; see also *Crosskey Architects, LLC* v. *POKO Partners, LLC*, 192 Conn. App. 378, 400, 218 A.3d 133 (2019) ("[u]nder § 37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances" (internal quotation marks omitted)). "To award § 37-3a interest, two components must be present. First, the claim to which the prejudgment interest attaches must be a claim for a liquidated sum of money wrongfully withheld and, second, the trier of fact must find, in its discretion, that equitable considerations warrant the payment of interest." (Internal quotation marks omitted.) *Crosskey Architects, LLC* v. *POKO Partners, LLC*, supra, 401. Because an award of prejudgment interest requires a determination that the losing party wrongfully withheld a liquidated sum after it became payable and that equity warrants payment of interest, § 37-3a necessarily requires an inquiry into the substantive issues in the case. Moreover, because "[i]nterest awarded pursuant to . . . § 37-3a constitutes an element of the damages awarded"; *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, supra, 652; an award of such interest is not independent of the judgment but, rather, forms part of the damages awarded when there is a finding that the defendant wrongfully withheld money after it became payable.

In the present case, the issue of prevailing party attorney's fees is similar to offer of compromise interest pursuant to § 52-192a in that a determination of the defendants' entitlement to such fees is unrelated to the substantive law governing the plaintiff's veil piercing

claim. First, the defendants do not dispute that the TCI rule allowing for the recovery of attorney's fees by a prevailing party is not specific to the cause of action at issue in this case but applies generally to all civil actions.[8] Moreover, unlike prejudgment interest awarded pursuant to § 37-3a, an award of prevailing party attorney's fees does not require a substantive examination of the claims and defenses or a finding that the losing party acted wrongfully in connection with the events underlying the cause of action. Rather, like offer of compromise interest under § 52-192a, prevailing party attorney's fees are awarded based on the outcome of the litigation and are solely related to the conduct of the litigation, not to the facts or substantive law underlying the claims. In addition, unlike prejudgment interest under § 37-3a, an award of attorney's fees is not part of the damages awarded on the underlying claims, but "is independent of the judgment, can be calculated only after judgment has been rendered . . . is awarded upon a posttrial motion . . . [and] is unrelated to the underlying debt." *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, supra, 22 Conn. App. 653–54. In other words, the general rule under TCI law that a prevailing party is entitled to attorney's fees does not relate to the underlying right on which the cause of action is based but, rather, relates to "the methods of

---

[8] We note that the parties' appellate briefs do not provide much detail about the contours of TCI law concerning the availability of attorney's fees. In the trial court, in connection with their initial motion for attorney's fees, the defendants submitted an affidavit from a TCI attorney explaining general principles of TCI law regarding the availability of attorney's fees, attached to which were certain ordinances and rules regarding the assessment of costs and fees. As the plaintiff notes, the general rules regarding the assessment of costs and fees are contained within the TCI Civil Procedure Ordinance and appear to apply to all civil proceedings. See Civil Procedure Ordinance, 2021, c. 4.01, § 61 (Turks & Caicos Is.) ("[i]n every action or matter all costs shall be taxed by the Registrar subject to the review of such taxation by a judge"); Civil Procedure Ordinance, 2021, c. 4.01, § 2 (1) (Turks & Caicos Is.) (defining " 'action' " to mean "a civil proceeding commenced by an application for process").

enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *Weber* v. *U.S. Sterling Securities, Inc.*, supra, 282 Conn. 739. As the trial court concluded, a request for attorney's fees "can be ruled upon without examination of the substantive decision regarding piercing the corporate veil because [the request does] not relate to the merits of the case, but to the means of enforcing the litigants' rights and obtaining redress."

The defendants argue that, because "[a] party cannot receive prevailing party attorney's fees unless and until they have prevailed upon the merits of the underlying claims," an award of such fees is not independent of the judgment but "is clearly *wholly dependent* on the merits of the underlying claim." (Emphasis in original.) This argument misconstrues our analysis in *Paine Webber.* In that case, our conclusion that offer of compromise interest under § 52-192a was "independent of the judgment"; *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, supra, 22 Conn. App. 653; did not mean that the outcome of the case on the merits was irrelevant to such an award. Indeed, as we recognized, § 52-192a expressly requires the court to "examine the record after trial" to determine whether "the plaintiff's recovery exceeds the rejected offer of judgment found in the record . . . ." Id. Rather, we concluded that an award of offer of compromise interest was independent of the judgment because, unlike with prejudgment interest under § 37-3a, an award under § 52-192a does not require an examination of the substantive legal and factual issues in the case and is unrelated to the underlying debt, instead only requiring the court to review the judgment to determine whether the prevailing party recovered more than its offer of compromise. Thus, the fact that an award of attorney's fees under TCI law is available only after a party prevails on the merits of a

claim makes such fees similar to, and not distinguishable from, offer of compromise interest awarded pursuant to § 52-192a.

As indicated in footnote 5 of this opinion, in their principal appellate brief, the defendants relied on, inter alia, our Supreme Court's decision in *Gershon* v. *Back*, supra, 346 Conn. 181, which applied the test set forth in the commentary to § 122 of the Restatement (Second) of Conflict of Laws for "rules that 'fall into a gray area between issues relating primarily to judicial administration and those concerned primarily with the rights and liabilities of the parties .' . . ." Id., 196, quoting 1 Restatement (Second), supra, § 122, comment (a), p. 351. During oral argument, however, the defendants agreed that *Paine Webber* sets forth the proper framework for deciding this case. Nevertheless, although we do not believe that generally applicable rules governing the availability of attorney's fees fall in the " 'gray area' " identified in *Gershon*; *Gershon* v. *Back*, supra, 196; because this is an issue of first impression and both parties addressed the analysis in *Gershon* in their briefs, we likewise apply that analysis to the defendants' claim. We conclude that the analysis in *Gershon* provides further support for our conclusion that the availability of attorney's fees is a procedural matter governed by Connecticut law.

In *Gershon*, the Supreme Court addressed whether New York's plenary action rule, pursuant to which a separation agreement generally survives a later judgment of divorce and cannot be opened, modified, or vacated by way of a motion to modify the divorce decree but, instead, must be challenged in a separate plenary action, was procedural or substantive for choice of law purposes. See id., 196–98. The plaintiff in that case sought to open and set aside a judgment of divorce that had been entered in New York and that "incorporated [a] separation agreement by reference but provided that

the separation agreement 'shall survive and shall not be merged in [the divorce] judgment . . . .' " Id., 186. After reviewing the general principles concerning the line between procedural and substantive rules, the court noted that, for "rules that 'fall into a gray area between issues relating primarily to judicial administration and those concerned primarily with the rights and liabilities of the parties,' " § 122 of the Restatement (Second) of Conflict of Laws "instructs courts to consider the following factors: (1) 'whether the issue is one to which the parties are likely to have given thought in the course of entering into the transaction'; (2) 'whether the issue is one [the] resolution [of which] would be likely to affect the ultimate result of the case'; (3) 'whether the precedents have tended consistently to classify the issue as "procedural" or "substantive" for [choice of law] purposes'; and (4) 'whether an effort to apply the rules of the judicial administration of another state would impose an undue burden [on] the forum.' " Id., 196, quoting 1 Restatement (Second), supra, § 122, comment (a), pp. 351–52.

Applying those factors, the court concluded that "New York's plenary action rule is so interwoven with the plaintiff's cause of action as to be deemed substantive." *Gershon* v. *Back*, supra, 346 Conn. 200. The court found especially convincing the fact that the separation agreement in that case "adopted in plain and forceful terms the very essence of New York's plenary action rule"; id.; which was "a weighty reason for applying that law rather than the local law of the forum . . . ." (Internal quotation marks omitted.) Id., 201. The court further observed that application of the plenary action rule would "affect the ultimate substantive outcome of [the] case because . . . the parties [had] contractual rights that . . . [could not] be undone by modifying the judgment of dissolution." (Internal quotation marks omitted.) Id. Lastly, the court noted that there was "no

settled precedent classifying New York's plenary action rule as procedural or substantive for choice of law purposes"; id.; and that requiring the plaintiff to challenge the separation agreement in a separate action would not pose an undue burden on the courts of our state because "Connecticut courts have recognized that separation agreements are contracts that may be litigated independently of the divorce judgment in a civil contract action." Id., 202.

The Supreme Court's reasoning in *Gershon* supports our conclusion that the availability of attorney's fees is a procedural matter governed by Connecticut law. First, unlike in *Gershon*, there is nothing in the record indicating that, when the plaintiff and SHI entered into the prime brokerage agreement, the parties considered the issue of which jurisdiction's laws regarding recovery of attorney's fees would govern in the event that the plaintiff sought to pierce SHI's corporate veil to hold Vik liable for SHI's debts.[9] Second, and also unlike in *Gershon*, a decision regarding the defendants' motions for attorney's fees is unrelated to, and has no impact on, the merits of the plaintiff's veil piercing claims.[10]

[9] As the plaintiff notes, the agreement governing the relationship between the plaintiff and SHI contains various provisions concerning both the law applicable to certain issues and indemnification for expenses and attorney's fees incurred as a result of a default under the agreement. Given that the parties expressly addressed related issues in the agreement, it is reasonable to infer that they did not consider the issue of which jurisdiction's law governing an award of attorney's fees would apply in a veil piercing action by the plaintiff against Vik. See 1 Restatement (Second), supra, § 122, comment (a), p. 351 ("[p]arties . . . do not usually place reliance on the applicability of the rules of a particular state to issues that would arise only if litigation should become necessary").

[10] Although the defendants argue that this factor weighs in their favor because "the issue of attorney's fees is entirely dependent and reliant on the merits of the underlying claims," that argument flips the second *Gershon* factor on its head. The question is not whether the defendants' request for attorney's fees depends on the outcome of the underlying claims, but whether "resolution [of the claim for attorney's fees] would be likely to affect the ultimate result of the case." (Internal quotation marks omitted.) *Gershon* v. *Back*, supra, 346 Conn. 196. Because a request for prevailing party attor-

Third, although both parties point us to state and federal decisions[11] that they claim support their respective positions, indicating that there is a split of authority on the issue, our review of the cases cited by the parties and our own independent research support the plaintiff's contention that the weight of authority from other jurisdictions that have addressed the issue have concluded that generally applicable rules regarding an award of prevailing party attorney's fees is a procedural matter.[12]

---

ney's fees cannot be adjudicated until after judgment on the merits has entered in the requesting party's favor, such a request could have no bearing on the ultimate result of the case.

[11] As the plaintiff argues, some of the federal cases that addressed the issue did so in the context of deciding whether the availability of attorney's fees was procedural or substantive for purposes of the doctrine set forth in *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) (*Erie*), which provides that federal courts sitting in diversity apply state substantive law but federal procedural law. As we recognized in *Paine Webber*, whether a rule is substantive or procedural under the *Erie* doctrine is a distinct inquiry from a state choice of law analysis, as "the [United States] Supreme Court has held that [some] matters normally regarded as procedural are substantive for the purposes of *Erie* cases." (Internal quotation marks omitted.) *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, supra, 22 Conn. App. 655; see also *Sun Oil Co.* v. *Wortman*, 486 U.S. 717, 726, 108 S. Ct. 2117, 100 L. Ed. 2d 743 (1988) (rejecting "the notion that there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws"). When a federal court concludes that the availability of attorney's fees is substantive for *Erie* purposes, that conclusion only means that the court will apply state law, as opposed to federal law, to the issue; it does not resolve the conflict of law issue here, namely, *which* state's law governs that issue. See *Alaska Rent-A-Car, Inc.* v. *Avis Budget Group, Inc.*, 738 F.3d 960, 973 (9th Cir.) ("[t]hough federal law establishes that attorney's fees law is substantive for *Erie* purposes, it is not necessarily substantive for choice of law purposes"), cert. denied, 571 U.S. 1024, 134 S. Ct. 644, 187 L. Ed. 2d 420 (2013). Indeed, some federal courts have concluded that the availability of attorney's fees is substantive for *Erie* purposes, meaning that the issue is governed by state law, but procedural for state choice of law purposes, meaning that the law of the forum state applies. See, e.g., id., 973–74 (concluding that rule regarding availability of attorney's fees was substantive for *Erie* purposes, and therefore governed by state law, but procedural under Alaska choice of law rules).

[12] We also note that several of the cases cited by the defendants are distinguishable because they addressed statutes providing for the recovery of attorney's fees in the context of a specific statutory cause of action. See,

Lastly, although the task of calculating and awarding attorney's fees is a familiar one that, as a general matter, is not unduly burdensome, we are not persuaded that this one factor is sufficient to support a conclusion that the availability of attorney's fees is a substantive issue. Rather, given the complete lack of connection between that issue and the underlying substantive law governing the plaintiff's veil piercing claim, we conclude that TCI's fee shifting rule is not "so interwoven with the plaintiff's cause of action as to be deemed substantive." *Gershon* v. *Back*, supra, 346 Conn. 200.

e.g., *Shisler* v. *Sanfer Sports Cars, Inc.*, 167 Cal. App. 4th 1, 11, 83 Cal. Rptr. 3d 771 (2008) (Florida unfair trade practices statute providing for prevailing party attorney's fees was substantive); *BMW of North America, LLC* v. *Henry*, 336 So. 3d 1255, 1258 (Fla. App. 2022) (awarding attorney's fees under federal consumer protection statute that contains fee shifting provision because "the Florida Supreme Court has determined that a *statutory* right to attorney's fees constitutes a substantive right" (emphasis added; internal quotation marks omitted)); *L. Ross, Inc.* v. *R.W. Roberts Construction Co.*, 466 So. 2d 1096, 1098 (Fla. App. 1985) (statutory amendment providing for recovery of attorney's fees for insureds who recover judgments against insurers was substantive because "[s]*tatutes* . . . which create a new right to attorney's fees [create] a substantive right in favor of a limited class of potential plaintiffs (insureds) and a substantive burden or obligation upon a limited class of potential defendants (insurers)" (emphasis added; footnote omitted)).

We acknowledge the possibility that, where a statutory provision allows for the recovery of attorney's fees for a specific statutory cause of action, that provision may be "so inseparable from the cause of action that it must be enforced to preserve the integrity and character of the cause [of action] . . . ." (Internal quotation marks omitted.) *Thomas Iron Co.* v. *Ensign-Bickford Co.*, 131 Conn. 665, 669, 42 A.2d 145 (1945); see, e.g., *Reclaimant Corp.* v. *Deutsch*, supra, 332 Conn. 605 (where right did not exist at common law but is created by statute, limitation period "is properly characterized as substantive because the period of repose is so integral a part of the cause of action as to warrant saying that it qualifie[s] the right" (internal quotation marks omitted)). As the defendants acknowledge, however, the TCI fee shifting rule at issue is one of general applicability that applies irrespective of the nature of the cause of action asserted in the litigation. For the reasons explained previously in this opinion, such rules of general applicability are procedural because they are not closely related to the underlying right but, rather, concern "the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *Weber* v. *U.S. Sterling Securities, Inc.*, supra, 282 Conn. 739.

Finally, we are not persuaded by the defendants' argument that failing to apply TCI's fee shifting rule in the present case would be inequitable or encourage forum shopping. Specifically, the defendants argue that, because the plaintiff was awarded its attorney's fees after the English judgment was rendered in its favor, "[the plaintiff's] attempt to enforce that very same judgment against Vik should, as a matter of equity, be subject to the very same fee shifting principles" and that the failure to do so would encourage "international forum shopping." As our Supreme Court has recognized, however, the American rule "is well entrenched in our jurisprudence"; *Doe* v. *State*, 216 Conn. 85, 106, 579 A.2d 37 (1990); and, as a general matter, "it is the prerogative of the legislature, not the courts, to determine the circumstances under which an award of attorneys' fees to the prevailing party will be authorized." Id., 111; see also id. (rejecting claim that court should award attorney's fees as matter of equity). Moreover, as the plaintiff argues, the defendants were ordered to pay the plaintiff's attorney's fees in connection with the English judgment because that proceeding was governed by English procedural rules. The defendants do not cite any authority for the proposition that we should abandon our choice of law rules and refuse to apply well settled Connecticut procedural law solely because a foreign jurisdiction, applying that jurisdiction's own procedural rules, ordered the defendants to pay attorney's fees in an entirely separate proceeding.[13]

For the foregoing reasons, we conclude that the trial court properly determined that the adjudication of the

[13] With respect to the defendants' contention that failing to apply TCI law to their claim for attorney's fees will encourage forum shopping, we simply note that Vik resides in Connecticut and ran SHI out of an office attached to his Connecticut residence. Given that the plaintiff brought this action in the state in which Vik resides and where the events at issue took place, we see no risk that our decision to apply well settled Connecticut procedural law concerning the availability of attorney's fees will encourage forum shopping.

defendants' motions for attorney's fees was a procedural matter governed by Connecticut law and, therefore, that the court properly denied the defendants' motions.

The judgment is affirmed.

In this opinion the other judges concurred.